UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

NATHAN B. MAKOWSKI,

        Debtor.

Case No. A12-00612-GS
Chapter 13

**MEMORANDUM ON MOTION FOR SANCTIONS**

Debtor Nathan Makowski seeks damages from Greater Nevada Credit Union ("Greater Nevada") pursuant to 11 U.S.C. § 362(k)(1) for its failure to immediately return his 2010 Ford 150 pickup truck upon the filing of his chapter 13 petition. Greater Nevada holds a lien against the truck, and repossessed it prior to the bankruptcy filing. For the reasons set forth below, the court finds that Greater Nevada willfully violated the automatic stay, but concludes, based upon the evidence presented, that damages are limited to the recovery of attorney fees and costs.

**Facts**

Greater Nevada financed a loan for the debtor to purchase a 2010 F150 pickup truck, and has a lien against the vehicle to secure the outstanding loan balance, which was $32,275.40 at the time the debtor filed his chapter 13 petition.[1] Greater Nevada repossessed the truck on October 4, 2012, after the debtor defaulted on his loan payments. This forced the debtor to borrow a vehicle so he could travel to and from work. A week after the repossession, on October 11, 2012, the debtor filed his chapter 13 bankruptcy petition. The

---

[1] *See* Greater Nevada's *Claim No. 1*, filed Oct. 17, 2012.

same day, the debtor's counsel, Frank Cahill, faxed a letter to the tow yard where the truck was being held to give notice of the bankruptcy filing and demand return of the truck. The letter reflects that a copy was also faxed to Greater Nevada at an out of state number.

Mr. Cahill spoke with someone at Greater Nevada the next day, Friday, October 12, 2012, regarding the bankruptcy and the debtor's demand for the return of his truck. The parties agree that during this conversation, Greater Nevada asked to have until noon on Monday, October 15, 2012, so it could review the situation over the weekend. Mr. Cahill agreed to this request. At 11:46 a.m. on Monday, October 15, 2012, Mr. Cahill filed his *Motion Against Creditor Greater Nevada Credit Union for an Order Compelling Release of Vehicle, and for Damages and Sanctions for Violation of the Automatic Stay* ("*Motion*"). The *Motion* alleges Greater Nevada willfully violated the automatic stay by refusing to release the truck to the debtor.[2] It represents that Cahill "spoke to an unnamed representative at Area Wide Towing and Recovery, and to Winthrop Johnson, of Greater Nevada Credit Union, on Friday, October 12, and Mr. Johnson confirmed on Monday, October 15 that the vehicle would not be released, and the creditor intended to seek relief from stay."[3]

The *Motion* was filed before the agreed noon deadline on October 15th. The reason for this is explained in the debtor's *Motion for Hearing Motion for Sanctions on Shortened Time*, also filed on October 15th:

> Counsel for the debtor has discussed [the need for the return of the truck] with the creditor, Greater Nevada Credit Union,

---

[2] *Motion*, Docket No. 15 at 1.

[3] *Id.* at 2.

2

      through its employee Win Johnson, who advised that they would talk with their counsel about the principal motion by noon on Monday, October 15, 2012 (Alaska time); Mr. Johnson called undersigned counsel's office on October 15 at approximately 9:40 am to advise that the credit union would not voluntarily release the vehicle.[4]

Later that same day, the debtor withdrew his request to shorten time to hear the *Motion*. No reason was given at that time. On November 1, 2012, Greater Nevada filed a *Response to Debtor's Motion* ("*Response*"), in which it advised that it had released the truck to the debtor on October 15, 2012.[5] The *Response* generally confirms the debtor's recitation of facts, except that no mention, or denial, is made regarding Mr. Cahill's conversations with Win Johnson on the morning of Monday, October 15, 2012.

The matter came before the court for hearing on February 27, 2013. When asked if he had agreed to give Greater Nevada until October 15, 2012 to review the situation, Mr. Cahill candidly admitted, "I think I did agree to give them until the 15th." The only witness to provide testimony was the debtor, who had a specific recollection of picking up the truck around noon on Tuesday, October 16th. The debtor also testified that as a result of the repossession, he had to borrow his son's vehicle because he needed a car for work. The weekend after the petition was filed, he used the borrowed vehicle to tow a trailer to a work site. The debtor purchased a tank of gas for the vehicle, which he valued at $120.00, and a hitch package, valued at $130.00, so that the vehicle could tow the trailer. The debtor

---

[4] *Mot. for Hearing Mot. for Sanctions on Shortened Time* (Docket No. 16), at 1.

[5] *Response* (Docket No. 21), at 2.

3

completed the job over the weekend. This was the same weekend that Greater Nevada was given to "review the situation" by the debtor's counsel, Mr. Cahill.

## Analysis

The automatic stay is one of the most fundamental protections afforded a bankruptcy debtor.[6] For this reason, the Bankruptcy Code directs that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages."[7] A creditor willfully violates the automatic stay if it knew of the automatic stay and intentionally takes an action that violates the stay.[8] It is not necessary to show an intent to violate the stay, only that the creditor intentionally undertook the action that violated the stay.[9] Accordingly, "a creditor's good faith belief that the stay was not being violated is not relevant to the issue of willfulness."[10]

The automatic stay prohibits both actions taken to obtain possession of property of the estate, as well as actions that exercise control over property of the estate.[11] A creditor's

---

[6] 11 U.S.C. § 362(a); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002).

[7] 11 U.S.C. § 362(k)(1).

[8] *Eskanos & Adler,* 309 F.3d at 1215.

[9] *Lindblade v. Knupfer (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003).

[10] *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 192 (Bankr. C.D. Cal. 2011) (*citing Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004)).

[11] 11 U.S.C. § 362(a)(3).

4

retention of the debtor's repossessed vehicle may violate the stay. In *In re Abrams*,[12] a lessor repossessed the debtor's automobile without knowledge that the debtor had filed bankruptcy. The debtor's counsel notified the lessor of the bankruptcy by fax, and demanded return of the vehicle. Four days later, the debtor personally contacted the lessor to inform it of the bankruptcy and again demand return of the vehicle. Still, the lessor refused. Several days afterward, the debtor filed an adversary complaint to recover the vehicle and sanctions for willful violation of the stay. The bankruptcy court held that the lessor had not violated the stay by retaining the vehicle, but had violated the turnover obligations of 11 U.S.C. § 542.

On appeal, the Bankruptcy Appellate Panel reversed, holding that while the post-petition repossession was an inadvertent violation of the stay, the lessor's refusal to remedy the violation upon learning of the bankruptcy transformed the retention of the vehicle into a willful stay violation.[13] Because the vehicle remained property of the estate despite the repossession, the court concluded that "a creditor's knowing retention of property of the estate constitutes a violation of the automatic stay."[14] Considering the fundamental nature of the stay, the court also recognized that "the duty to insure the post-petition return of property of the estate lies with the entity in possession of such property, and not the debtor."[15]

---

[12] *Abrams v. Sw. Leasing and Rental Inc. (In re Abrams)*, 127 B.R. 239 (B.A.P. 9th Cir. 1991).

[13] *Id*. at 244.

[14] *Id.* at 242.

[15] *Id*. at 243.

5

The Ninth Circuit adopted the *Abrams* reasoning in *In re Del Mission, Ltd.*[16] Instead of a repossessed vehicle, the Ninth Circuit considered whether the continued retention of disputed taxes paid under protest by the chapter 7 trustee to the State of California violated the automatic stay. In prior litigation, the State of California had been ordered to repay the disputed taxes to the debtor. It argued that it was not obligated to repay the disputed taxes until it received a specific request from the bankruptcy trustee. The court rejected this argument as contrary to the holding in *Abrams*, and held that "the knowing retention of estate property violates the automatic stay of § 362(a)(3)."[17] The court also noted that an entity in possession of estate property had a mandatory duty, under 11 U.S.C. § 542(a), to surrender the property upon learning of a debtor's bankruptcy filing.[18]

As *Del Mission* and *Abrams* clearly establish, Greater Nevada was obligated to return the truck to the debtor upon verification that he had indeed filed for bankruptcy. And, Greater Nevada did indeed return the vehicle to the debtor. The question is whether it did so timely. The court in *Abrams* recognized that a creditor's turnover of estate property must occur "within a reasonable period of time after notice of bankruptcy."[19] In discussing this "reasonableness element," the *Abrams* court relied upon an earlier decision, *In re Carlsen,*[20] where the Internal Revenue Service had garnished the debtor's prepetition wages, but

---

[16] *California Emp't Dev. Dep't v. Taxel (In re Del Mission, Ltd.)*, 98 F.3d 1147 (9th Cir. 1996).

[17] *Id.* at 1151.

[18] *Id.*

[19] *Abrams*, 127 B.R. at 243.

[20] *Carlsen v. Internal Revenue Service (In re Carlsen)*, 63 B.R. 706 (Bankr. C.D. Cal. 1986).

6

received the garnished wages after the bankruptcy filing. The debtor complained that the IRS had violated the stay by failing to release its lien before his first post-petition payday. The court recognized that there is no bright line to define how quickly a creditor must release a levy, and that the answer will necessarily depend upon the circumstances of each case. Nonetheless, the court cautioned:

> It is incumbent upon the creditor to release its lien without delay as soon as it is aware of the bankruptcy and of the legal effects of that bankruptcy. Naturally this Court would not chastise a creditor for seeking legal counsel before it acts. But any delay in obtaining that legal advice is unwarranted and a violation of the stay.[21]

Here, Greater Nevada was informed of the debtor's bankruptcy the same day that the petition was filed, October 11, 2012. Greater Nevada did not immediately return the vehicle to the debtor, but requested time to review the situation over a weekend before deciding whether to return the truck. Presumably, Greater Nevada planned to use this time to seek legal advice. The debtor's counsel agreed to give Greater Nevada until noon on Monday, October 15, 2012, to return the truck. Under the *Carlsen* standard, this brief, four-day delay was reasonable under the circumstances.

Prior to expiration of this deadline, however, Greater Nevada advised the debtor's counsel that it would not return the truck. At that point, it violated the automatic stay by exercising control over property of the estate. Because Greater Nevada intentionally retained the vehicle with actual knowledge of the bankruptcy, it willfully violated the stay, subjecting itself to damages under § 362(k)(1).

---

[21] *Id*. at 710.

Greater Nevada opposes the motion for sanctions, but does not deny that it told Mr. Cahill it would not return the debtor's truck. Instead, it argues that sanctions should not be imposed because it ultimately agreed to return the truck on October 15, 2012, the same day as the noon deadline. This ignores the reality of the situation. When Greater Nevada informed the debtor that it would not return the vehicle, he was required to take legal action that should not have been necessary. It was only after the debtor filed the *Motion,* on shortened time, that Greater Nevada reversed course and agreed to return the truck. Its prompt reversal militates against an award of punitive damages, but does not erase the willful nature of its stay violation.

Section 362(k)(1) mandates that an individual injured by a willful stay violation recover actual damages, including attorney's fees and costs. The only evidence of damages presented at the hearing related to the debtor's purchase of fuel and a hitch for a borrowed truck so that he could haul his work trailer to a job outside of Anchorage the weekend after he filed bankruptcy. However, the debtor agreed to give Greater Nevada this same weekend to review the situation. Greater Nevada, therefore, did not willfully violate the stay until it refused to release the truck the following Monday. Because the stay violation occurred after the debtor had already incurred these expenses, they are not recoverable as damages.

Attorney fees and costs are expressly recoverable for a willful stay violation under § 362(k)(1). Greater Nevada's stay violation did cause the debtor to incur attorney fees to file the *Motion*. The debtor may recover these attorney fees as damages here. Mr. Cahill shall file an itemized billing statement for the fees and costs incurred on the *Motion* by

8

**Tuesday, May 28, 2013.** Greater Nevada shall file any objections it may have to these fees and costs by **Tuesday, June 4, 2013.** The matter will thereafter be deemed submitted, and the court will enter an order liquidating the amount of damages to be awarded to the debtor for Greater Nevada's willful violation of the stay.

An order will be entered consistent with this *Memorandum.*

DATED: May 16, 2013.

                                             BY THE COURT

                                             /s/ Gary Spraker
                                             GARY SPRAKER
                                             United States Bankruptcy Judge

Serve:  F. Cahill, Esq.
          J. Solseng, Esq.
          L. Compton, Trustee
          U. S. Trustee